Charles L. Jackson v. Commissioner.
Jackson v. Commissioner
Docket No. 4789-66.
United States Tax Court
T.C. Memo 1968-108; 1968 Tax Ct. Memo LEXIS 191; 27 T.C.M. (CCH) 528; T.C.M. (RIA) 68108; June 6, 1968. Filed *191 Charles L. Jackson, pro se, 415 E. Seventh St., Plainfield, N. J. William M. Gross, for the respondent. SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined a deficiency in petitioner's income tax for the calendar year 1964 in the amount of $225.16. The only issue for decision is whether petitioner is entitled to dependency credit exemptions for his two minor children for the year here in issue. Findings of Fact Some of the facts have been stipulated and are found accordingly. Petitioner at the time of the filing of the petition in this case resided in Plainfield, New Jersey. His individual Federal income tax return for the calendar year 1964 was filed with the district director of internal revenue at Newark, New Jersey. Petitioner and his former wife Janet (now Janet Gawrych) were separated in 1959 and divorced on March 9, 1965. Lenore Jackson and Charles Jackson, Jr., children of petitioner and Janet, resided with their mother during the entire taxable year 1964. Lenore was born in 1955 and Charles, Jr., in u.56. During the calendar year 1964 petitioner paid $25 a week, or a total of $1,300, directly to Janet for support *192 of the two children, Lenore and Charles, Jr. In addition to payments made directly to Janet, petitioner spent the following amounts for support of Lenore during the calendar year 1964: 529 Clothes
$ 42.90
Medical expenses including hospitali- zation insurance
73.00
Entertainment, trips, food, and gifts on the days when he took the chil- dren in accordance with his visita- tion privileges
125.00
Other gifts such as birthday and Christmas gifts 50.00
Total
$290.90 For the calendar year 1964, in addition to support payments made to Janet, petitioner made the following payments for support of Charles, Jr.: Clothes
$ 65.95
Medical expenses including hospitali- zation insurance
48.00
Entertainment, trips, gifts, and food on days when petitioner had the children in accordance with his vi- sitation privileges
125.00
Other gifts such as Christmas and birthday gifts 50.00
$288.95
On approximately January 2, 1964, Janet and the two children moved into Janet's parents' home. Janet and the two children lived in Janet's parents' home until approximately the 15th of May. During this period Janet paid to her parents for room and to some extent *193 for board for herself and the children $25 per week. On May 15, 1964, Janet moved into a garden apartment for which she paid $130 a month, her rent running from the 15th of May to the 15th of June and for consecutive months thereafter. The only utilities for which Janet paid in addition to rent for this apartment were gas for cooking, electricity, and telephone. The gas and electric bill combined averaged between $8 and $10 per month, and the telephone bill averaged between $10 and $12 a month. The basic telephone service was $5.75 per month and many calls which were made on the telephone were toll calls. During the first 3 weeks when Janet, Lenore, and Charles, Jr., were living with Janet's parents, Janet was not working and she made no payment towards the grocery bill. After approximately 3 weeks, Janet began doing some part-time work as a waitress and about a month later began working in a regular position for the Boy Scouts of America. In August or September, Janet became employed by Lockheed. Janet's total earnings during the year 1964 from all three positions were $2,734.11. After Janet began working, she would go grocery shopping with her mother and would pay for some *194 part of the groceries. Although there was no precise portion of the grocery bill which Janet paid, the amount she would pay would range between $15 and $20 a week. Janet had a bedroom in her parents' home and the two children shared a bedroom. While Janet was living in her parents' home she would take the sheets used by herself and the children, the children's clothes and some of her clothes to a laundromat for laundering and after she moved into the garden apartment she used the washing machines and dryers furnished by the apartment at a cost of 25 cents per load for washing and 25 cents per load for drying. Janet kept no detailed records of the amount she spent on the children's support during the year 1964. In addition to the $2,734.11 which she earned in 1964, and the $1,300 which she received from petitioner, Janet had available for total expenditures for herself and the children $860 which she borrowed from her father. During the first part of 1964 Janet had an old Buick automobile. When she started to work for Lockheed, she bought a 1960 Plymouth at a cost of $500. She used this care to drive to work and to take the children to the babysitter. She "junked" the Buick, and *195 the license plates for the Buick which had cost her $25 were transferred to the Plymouth. Liability insurance covering both cars during the year 1964 cost Janet $67. Janet purchased the Plymouth in September of 1964 with money borrowed from the Credit Union at her place of employment. She repaid the loan by having $15 a week withheld from her weekly salary check. Ultimate Facts The total support of Lenore during the year 1964 was $1,791, and the total support of Charles, Jr., during this same year was $1,829. Of the total support of Lenore, petitioner contributed $941 and of the total support of Charles, Jr., he contributed $939, thereby contributing more than onehalf of the support for each of the two children during the calendar year 1964. Opinion This case is purely factual. Payments of $1,300 or $650 for each child were made by petitioner directly to his wife Janet. From the evidence we have determined the other payments made by petitioner for the children's support. Petitioner made payments for Lenore's support in addition to 530 the amounts paid directly to Janet for clothes, medical expense, food, entertainment, trips, and gifts in the total amount of $291 and made *196 payments in addition to the amount paid directly to Janet for support of Charles, Jr., during the calendar year 1964 for comparable items in the amount of $289. The total support of the children consisted of whatever amount Janet expended on their lodging, food, clothes, and incidental expenses plus the amounts in addition to the amount which was paid by petitioner to Janet which petitioner spent for the support of the children. Janet testified that she estimated that she spent during 1964 for each Lenore and Charles, Jr., $480 for rent, $53 for utilities, $520 for food, $200 for clothing, $50 for medicine and toiletries, $50 for educational expenses, $100 for entertainment and gifts, $100 for child care, $50 for car expense and other transportation, and $50 for laundering at the laundromat and apartment washing machines. Janet arrived at the amount she spent for rent by charging rent at $100 a month for 4 months and at $130 a month for 8 months and dividing the total of $1,440 by three. She arrived at the $520 for food by assuming a food bill of $30 a week for the family and allocating one-third to each member of the family. She arrived at the cost of utilities by assuming electric, *197 gas, and telephone bills totaling $20 a month for the 8 months when she lived in the garden apartment and dividing the $160 by three. Her determinations for clothes, education, medicine and toiletries, car expense and other transportation, and entertainment and gifts were entirely estimates. She paid her niece to take her children to school and get them after school and keep them until she came home from work, a total of $200 during the year 1964. We consider that Janet overlooked certain facts in making her estimates. Janet estimated $520 for food for each child on the basis of $10 a week. However, her own testimony shows that while she was living with her parents up to May 15, 1964, her $25-a-week payment to her parents included room and board for herself and the children for the first 3 weeks and thereafter included room and board except for $15 to $20 a week Janet paid toward the grocery bill. Therefore, accepting Janet's testimony, the food estimate should be reduced by at least $80. The record also shows that over one-half of the utility bills estimated by Janet was for telephone and that a substantial portion of the telephone bills was for toll calls. On the basis of the evidence *198 given by Janet, we consider that $30 is more nearly a correct estimate of cost of utilities for each of the children during 1964 than Janet's estimate of $53. Considering the clothes furnished by petitioner for each of the children which Janet admitted were so furnished, although she questioned the prices which petitioner stated he paid for such clothing, we conclude that Janet's estimate of $200 for clothes for each child is excessive. On the basis of all the evidence of record we have therefore concluded that the total amount expended by Janet for the support of each of her children in the year 1964 was $1,500, and in this manner have arrived at the amount we have determined to be the total support of each of the children for the year 1964. In making our determination of the amount of total support of the children, we have given consideration to the total amount available to Janet to spend and certain expenditures she made on items other than items of support for the children. Janet had $2,734.11 wages, $1,300 she received from petitioner, and $860 she borrowed from her father, a total of $4,898.11. Of this amount she expended at least $270 making payments on an automobile and *199 approximately $90 for license plates and insurance on the automobile. Janet testified that she had some repairs on the automobile including putting in a clutch. It is therefore apparent that even without considering the fact that probably some income and social security taxes were withheld from Janet's earnings, Janet had available for expenditures other than payments for purchase of an automobile and the license plates and insurance for her automobiles only $4,500. In allocating more to laundry for the children than an even one-third each of her estimate of the amount she spent at the laundromat and the apartment machines, Janet pointed out that most of the children's clothes were laundered in the laundromat or by washing machine, whereas most of her clothes were sent to the dry cleaners. Such statements as these by Janet give some indication that her personal expenditures may have exceeded those of the children. In any event, there is nothing in the record to indicate that an amount in excess of onethird of Janet's available cash was spent for 531 food, clothing, shelter, entertainment, and other incidental expenses of each of her children. If the possibly available $4,500 *200 is divided evenly among the three persons composing Janet's household, the result is $1,500 each. Considering all of the evidence, we have concluded that petitioner contributed more than one-half of the support of Lenore and more than one-half of the support of Charles, Jr., in the year 1964. Decision will be entered for petitioner.